1  ARA JABAGCHOURIAN (SBN 205777)
   ara@arajlaw.com
2  **LAW OFFICES OF ARA JABAGCHOURIAN, P.C.**
   1650 S. Amphlett Boulevard, Suite 216
3  San Mateo, CA 94402
   Telephone: (650) 437-6840
4  Facsimile: (650) 403-0909

5

6  *Attorneys for Plaintiff and Putative Class*

7  **UNITED STATES DISTRICT COURT**

8  **CENTRAL DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| **MARINE GRIGORIAN**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CITIBANK, N.A.**<br><br>Defendant. | CASE NO. 2:23-cv-9519<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Law Offices of
  Ara
Jabagchourian,
   P.C.

COMES NOW Plaintiff, Marine Grigorian, on behalf of herself and all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint against Citibank, N.A. (hereinafter "Citi") alleges as follows. Plaintiff bases the allegations in this Class Action Complaint on personal knowledge as to matters related to Plaintiff and on information and belief as to all other matters, through the investigation of Plaintiff's counsel. Plaintiff believes substantial evidentiary support exists for the allegations set forth herein, and she seeks a reasonable opportunity for discovery.

## I.

## NATURE OF THE ACTION

1. In what is the equivalent to financial institutions' discriminatory practice of "red-lining" in denying mortgages to African-Americans in the mid-twentieth century in the United States, Citi has expanded on this disgusting financial practice to "red-line" credit cards to those of Armenian national origin or heritage. Plaintiff alleges, on behalf of herself and all others similarly situated (the "Class," as defined below), that from a period from 2015 to the date of class certification (the "Class Period"), Citi had implemented a systemwide policy that applied extra scrutiny and denied certain credit card applications and canceling of active credit cards of those suspected having Armenian national origin or had a name denoting one having Armenian heritage.

2. The discriminatory practice was implemented by Citi's employees searching for the "ian" or "yan" contained at the end of the last name, especially if the resident address of the applicant or card holder was located at or near Glendale, California. Citi employed this discriminatory policy in a perverse effort to try to reduce its risk of credit fraud, by effectively labeling those of Armenian heritage as credit risks or "Armenian bad guys".

3. This ethnically discriminatory policy more frequently denied credit to applicants and/or had credit revoked based on Armenian national origin or heritage as compared to other similarly situated applicants and has no legitimate, non-discriminatory reason for this practice.

**COMPLAINT** 1

Law Offices of Ara Jabagchourian, P.C.

4. This pattern or practice of discrimination affected credit card applicants, including those seeking a new credit card or a credit line increase on an existing credit card, or merely held a Citibank credit card and had the credit card canceled by Citi were subject to manual underwriting by Defendant Citi's "Retail Services" unit.

## II.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of California, Defendant Citi is a national bank; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Defendants for reasons including but not limited to the following: Plaintiff's claims arise out of Defendants' conduct within this District. As a result of Defendants' marketing, distributing, promoting and/or selling, either directly or indirectly through third parties or related entities, of the financial credit products to purchasers throughout the United States, the Defendants obtain the benefits of the laws of this state and profits from commerce within this state. Defendants, through maintaining a store in the District, the promotion and marketing of the products, conducts systematic and continuous business activities in and throughout this state and otherwise intentionally avail themselves of the market of this state.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## III.

## PARTIES

**A.  Plaintiff**

8. Marine Grigorian (hereinafter "Plaintiff" or "Grigorian") resides in Granada Hills, California. For several years Grigorian held a Citi retail credit card from Costco and when she sought to have the credit limits increased, it was declined in 2023. Ms. Grigorian is of Armenian descent.

**B.     Defendants**

9.     Citibank, N.A. (hereinafter "Citi" or "Defendant") is a national bank with its principal place of business located in New York, New York, with branches and operations all throughout the United States, including California.

## IV.

## FACTUAL ALLEGATIONS

**HISTORY OF DISCIMINATION AGAINST ARMENIANS IN THE UNITED STATES**

10.     Armenians began immigrating from the Ottoman Empire after the first massacres perpetuated on them in 1894-1896.  The extreme racial, religious and cultural discrimination led to hundreds of thousands Armenians killed and displaced.  Many moved throughout the world with help of Christian missionaries based out of New England.

11.     Then with the fall of the Ottoman Empire and the rise of the Young Turks, a systematic extermination of Armenians was perpetuated by the Turkish government from 1915-1923, resulting in 1.5 million Armenians to perish.  Those who survived fled into exile.  Again, many were relocated to the United States, with large Armenian communities forming in California, including Fresno, San Francisco Bay Area and Los Angeles.

12.     As Armenians began to make America their home, they were not welcomed with open arms.  Discrimination was rampant and was both overt and covert.  For instances, at the insistence of the community leaders, many property deeds throughout the Central Valley of California had covenants restricting sale of real estate to Armenians.  Some of the restrictive covenants in these deeds would read as follows:

> "Neither said premises nor any part thereof shall be used in any matter whatsoever or occupied by any Negro, Chinese, Japanese, Hindu, Armenian, Asiatic or native of the Turkish Empire."

13.     With the fall of the Soviet Union, another mass exodus of Armenians occurred, with many making Los Angeles, and specifically, Hollywood and then Glendale and its surrounding areas home.  Once again, the discrimination of these new immigrants arose.

**COMPLAINT** 3

14. The discrimination has taken many forms. For instance, in the more recent times, the discrimination has been overt and has been perpetuated violently. An Armenian church building was fire-bombed in San Francisco back in 2020. The same year, an Armenian elementary and middle school in San Francisco was shot at and vandalized with derogatory statements painted on the walls. Similar vandalism occurred at an Armenian school located in the San Fernando Valley around the same time period.

15. There have been countless covert levels of discrimination experienced by those of Armenian ancestry. As significant majority of the discriminatory conduct is not explicit and overt, it is nearly impossible to prove that economic opportunities, job opportunities, loan applications, school admissions, etc. were rejected, denied and/or reduced because of one's Armenian ancestry. The Armenian-American community has always suspected that the discrimination was omnipresent, but arguments were always raised that these were isolated instances and in this modern age, institutional discrimination is a fallacy.

**CITI'S SYSTEMATIC DISCRIMINATORY PRACTICE**

16. What was once suspected has now become clear. Citi issued credit cards through retail services - partnerships with retailers throughout the United States that would have their brand name associated with the credit card. These credit cards would place the retailer's brand name on the credit card and have other arrangements with these retailers, but for which Citi would review credit card applications and whether to continue issuing credit to holders of those cards even after they have been approved.

17. Since 2015 to the present, Citi's employees charged with underwriting a credit card application and approving, denying or otherwise make a credit card decision of Citi's retail services applications routinely applied extra scrutiny to, negatively assessed, and often denied credit card applications if the applicant's last name ended in -ian or -yan, especially if the applicant's address was in or around Glendale, California.

18. Citi's employees considered whether the applicant's or current credit card holder's last name ended in -ian or -yan, especially if the applicant's address was in or around Glendale, California, in order to identify credit card applications submitted by an applicant of

perceived Armenian national origin or heritage. Furthermore, Citi's employees targeted those with an Armenian heritage as they were perceived as likely to incur significant charges and then "bust out," meaning they would leave the country or otherwise not pay off the charges.

19. Citi's employees took actions that negatively affected applicants for Citi retail services credit cards, holders of these credit cards, and/or credit line increases with a last name ending in -ian or -yan, especially if their address was in or around Glendale, California, including:

    a. denying the application, or approving credit on less favorable terms;

    b. applying additional scrutiny to the application, including requiring further information from the applicant such as verification of their income or assets;

    c. placing a block or a hold on the applicant's account; and

    d. referring the applicant to Citi's fraud prevention units for further review and a potential account freeze, line decrease, or account closure.

20. In order to enforce this discriminatory policy, Citi took corrective action against employees if they failed to identify and deny applications if the applicant's last name ended in -ian or -yan and address was in or around Glendale, California, including action that could affect the agent's performance rating, pay, and authority to approve future Citi retail services credit card applications.

21. To further disguise and conceal this illegal, discriminatory and unethical conduct, Citi's supervisors and trainers instructed Citi's employees to conceal their reliance in the credit decision on applicants' last names ending in -ian or -yan and addresses in or around Glendale, California, including by telling Citi's employees not to discuss it in writing or on recorded phone lines.

### FEDERAL INVESTIGATION AND CONSENT ORDER

22. The United States Consumer Financial Protection Bureau conducted a years' long

investigation on Citi's practices and found that under statistical regression analyses of Citi retail services credit card data from 2015 through 2021 for applications referred for judgmental review show that Respondent denied Citi retail services credit card applications from applicants with a last name ending in -ian or -yan more often than other similarly situated applicants, especially if the applicant also had an address in or around Glendale, California. These national-origin-based disparities in underwriting Citi retail services credit cards are statistically significant, meaning they are highly unlikely to have occurred by chance.

23. Citi did not have a legitimate, non-discriminatory explanation for its pattern or practice of applying extra scrutiny to, negatively assessing, and often denying credit card applications or revoking credit cards for Citi retail services credit cards if the applicant's or credit card holder's last name ended in -ian or -yan or address was in or around Glendale, California, and to the extent that Citi identified purportedly legitimate, non-discriminatory reasons for denying such applications and/or revoking credit cards already issued, those reasons were pretextual justifications for denying the applications and existing credit cards based on the national origin and/or heritage Citi attributed to the applicant or credit card holder.

24. The Consumer Financial Protection Bureau found Citi's pattern or practice described above discriminated against Citi retail services credit card applicants and holders in multiple aspects of the dealings related to the application or extended credit on the basis of national origin in violation of Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(1), and Regulation B, 12 C.F.R. §§ 1002.4(a), 1002.6.

25. When Citi denied a Citi retail services credit card application or revoked existing credit based on the applicant's Armenian national origin, Citi failed to inform the applicant accurately and adequately of the reason for the action in the adverse action notice as required by 15 U.S.C. § 1691(d) and 12 C.F.R. § 1002.9(a)-(b).

26. An example of this was in 2016, a Citi employee with authority to approve or deny Citi retail services credit card applications messaged another employee, "it's been a while since I declined for possible credit abuse/YAN—gimme some reasons I can use, or do I need to not worry about it?" The other employee responded with several apparently pretextual reasons

the first employee could use. Just one second later, the first employee replied that the application was "declined due to possible credit abuse."

27. This practice persisted even after concerns about denying applicants based on an address in Glendale were raised by Citi employees. For example, in 2018, a Citi employee sent an email to a group manager of Citi retail services and others, asking for advice about how to document adverse action reasons, stating "we can't tell [customers they are being declined] because they are in Glendale."

28. Citi therefore failed to provide a legally compliant statement of the specific reasons for the adverse action that Citi took against Citi retail services credit card applicants who were denied credit and/or those who held Citi retail credit cards and had them revoked based on their Armenian national origin, in violation of ECOA, 15 U.S.C. § 1691(d), and Regulation B, 12 C.F.R. § 1002.9(a)-(b). Citi's Equal Credit Opportunity Act violations described above also constitute violations of § 1036(a)(1)(A) of the Consumer Financial Protection Act, 12 U.S.C. §§ 5481(12)(D), (14), 5536(a)(1)(A); 15 U.S.C. § 1691c(b).

29. As a result of its investigation related to Citi's discriminatory consumer credit practices, the Consumer Financial Protection Bureau issued a Consent Order on November 7, 2023 executed by the Director of the Consumer Financial Protection Bureau, Rohit Chopra.

**GRIGORIAN IS TURNED DOWN ON HER REQUEST TO RAISE HER CREDIT LIMITS**

30. Grigorian was a long time holder of a Costco retail service credit card issued underwritten by Citi. She requested that her credit limit be raised on the credit card. Citi sent a notice in March of 2023 denying the request.

31. At no time was a legitimate reason provided as to why her credit card limit request was denied. It did not occur to her until the Consumer Financial Protection Bureau's Consent Order was published in the New York Times, Bloomberg, Associated Press and the Los Angeles Times did it dawn on her that her ethnicity was the basis of the denial of the limits being raised.

## V.

## CLASS ALLEGATIONS

32. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent the following class:

> Those who resided within the State of California at the time they either (1) applied for and were denied a Citi retail services credit card; (2) had an issued Citi retail services credit card and had it revoked; and/or (3) sought to increase their credit limit on their Citi retail services credit card and were denied from the dates of 2015 through June 2023 and who resided in California. Excluded from the California Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant, and the judicial officer to whom this lawsuit is assigned.

33. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

**Numerosity—Federal Rule of Civil Procedure 23(a)(1)**

34. The members of the Class are so numerous that individual joinder of all Class members is impracticable. While the exact number of Class members is presently unknown to Plaintiff, based on Defendant's volume of financial sales, Plaintiff estimates that each Class numbers in the thousands.

35. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include United States Mail, electronic mail, Internet postings, and/or published notice.

**Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and (b)(3)**

36. This action involves common questions of law or fact that predominate over any questions affecting individual Class members.

37. All Class members are exposed to Defendant's discriminatory and illegal credit

card approval and/or maintenance practices related to issuing or maintaining retail services credit cards to those of Armenian descent.

38. Furthermore, common questions of law or fact include:

a. Whether Defendant's denial of retail services credit cards constitutes an unfair and deceptive business practices;

b. Whether Defendant's conduct described above constitutes a violation of the Equal Opportunity Act, 15 U.S.C. §§1691(a) and 1691e;

c. Whether Plaintiff and the Class members are entitled to actual, statutory, or other forms of damages and other monetary relief; and

d. Whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution.

39. Citi engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

**Typicality—Federal Rule of Civil Procedure 23(a)(3)**

40. Plaintiff's claims are typical of the claims of other Class members because, among other things, Defendant injures all Class members through the uniform misconduct described herein, and all Class members are subject to Defendant's discriminatory credit card approval policies.

41. Further, there are no defenses available to Defendant that are unique to Plaintiff.

**Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4)**

42. Plaintiff will fairly and adequately represent and protect the interests of the members of each class. Plaintiff does not have any interests that are adverse to those of the Class members. Plaintiff has retained competent counsel experienced in class action litigation and intends to prosecute this action vigorously.

**Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2)**

43. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class members, thereby making appropriate final injunctive and declaratory relief, as described below, with respect to the Class as a whole.

**Superiority—Federal Rule of Civil Procedure 23(b)(3)**

44. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual Class members are relatively small the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

45. The prerequisites for maintaining a class action for injunctive or equitable relief under Federal Rule of Civil Procedure 23(b)(2) are met because Defendant has acted or refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive or equitable relief with respect to each Class as a whole.

## VI.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(Violation of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691(a), 1691e**

**On Behalf of the Class)**

46. Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

47. Plaintiff, on behalf of herself and the Class, brings this claim for violation of the Equal Credit Opportunity Act, 15 U.S.C. §1691(a) ("ECOA").

48. The ECOA prohibits discrimination against an applicant for credit based on race, color, religion, national origin, sex or marital status, or age

49. The ECOA creates a private right of action for actual, compensatory and punitive damages, equitable relief, and recovery of costs. 15 U.S.C. § 1691e(a)-(f).

50. Citi, on the one hand, and Plaintiff and the Class members, on the other hand, engaged in seeking to obtain and deciding to issue credit as the ECOA contemplates, among other reasons, Citi provides credit through credit retail services cards through an application process to Plaintiff and the Class members who either sought to obtain a credit card or had one and had it revoked based on their Armenian heritage, origin and/or nationality.

51. Defendant's actions, representations, and conduct have violated, and continue to violate, the ECOA they extend to transactions that are intended to result, or that have resulted, denying credit to Plaintiff and the Class based on the discrimination set forth above.

52. As alleged above, Citi has have violated, and continues to violate, 15 U.S.C. § 1691(a) by discriminating to retail services credit card applicants and/or retail credit card holders who had credit revoked based on solely their Armenian ethnicity, nationality and/or heritage.

53. On information and belief, Defendant's actions were willful, wanton, fraudulent, and made with conscious disregard. Citi's efforts to conceal this illegal and discriminatory conduct by instructing its employees to not put anything as to the discriminatory reasons for the credit denials in writing and only was also malicious.

54. On information and belief, officers, directors, or managing agents at Citi authorized the use of these discriminatory credit practices.

55. Pursuant to 15 U.S.C. §§ 1691e(c) and (d), Plaintiff and the Class members seek an injunction to bar Citi from continuing the practice as Plaintiff intends to reapply for a Citi retail services credit card, declaratory relief finding Citi has violated the ECOA and reasonable attorneys' fees and costs.

56. THEREFORE, Plaintiff prays for relief as set forth below.

**SECOND CLAIM FOR RELIEF**

**(Violation of the Unfair Competition Law, BUS. & PROF. CODE § 17200 *et seq.***

**On Behalf of the Class)**

57. Plaintiff incorporates and realleges the paragraphs above as if fully set forth

**COMPLAINT** 11

herein.

58. Plaintiff brings this claim for violation of the Unfair Competition Law, BUS. & PROF. CODE § 17200 et seq. ("UCL"), on behalf of the Class.

59. The circumstances giving rise to Plaintiff's and the Class members' allegations include Citi's corporate policies regarding the issuing, raising the limit and/or maintaining credit of retail services credit cards to the general public.

60. Under the UCL, "unfair competition" means and includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by" the BUS. & PROF. CODE § 17200.

61. By engaging in the acts and practices described herein, Defendant commits one or more acts of "unfair competition" as the UCL defines the term.

62. Defendant committed, and continue to commit, "unlawful" business acts or practices by, among other things, violating the ECOA, 15 U.S.C. § 1691(d), and Regulation B, 12 C.F.R. § 1002.9(a)-(b).  § 1036(a)(1)(A) of the Consumer Financial Protection Act, 12 U.S.C. §§ 5481(12)(D), (14), 5536(a)(1)(A); 15 U.S.C. § 1691c(b)as described herein.

63. Defendant committed, and continue to commit, "unfair" business acts or practices by, among other things:

a. Engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and the members of the Class;

b. Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and

c. Engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws that this Class Action Complaint invokes.

64. Defendant commits unlawful, unfair, and/or fraudulent business acts or practices by, among other things, engaging in conduct Defendant knew or should have known was likely to and do deceive reasonable consumers, including Plaintiff and the Class members.

65. As detailed above, Defendant's unlawful, unfair, and/or fraudulent practices

include making false and/or misleading representations that the retail services credit card was denied or revoked the credit card application and/or existing credit.

66. Plaintiff and the Class members believed Citi's conduct in denying or revoking credit was made for a reason other than unlawful discrimination.

67. Plaintiff and the Class members are injured in fact and lose money as a result of Defendant's conduct of improperly denying or revoking credit for retail services credit cards. Plaintiff and the Class were denied credit, either through the denial of the application for retail services credit cards and/or having an existing retail services credit card revoked.

68. Plaintiff and the Class members seek declaratory relief, restitution for monies wrongfully obtained, injunctive relief, and other relief allowable under Business and Professions Code section 17203, including but not limited to enjoining Defendant from continuing to engage in its unfair, unlawful, and/or fraudulent conduct alleged herein.

69. THEREFORE, Plaintiff prays for relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class members, respectfully requests that the Court enter an Order:

A. Certifying the Class pursuant to Federal Rule of Civil Procedure 23 and adjudging Plaintiff and her counsel adequate Class representatives;

B. Declaring Defendant financially responsible for notifying the Class members of the pendency of this suit;

C. Requiring Defendant to pay Plaintiff and the Class members economic, monetary, consequential, compensatory, or statutory damages, whichever is greater, and, if Plaintiff proves Defendant's conduct was willful, awarding Plaintiff and the Class members exemplary damages to the extent to which the law provides;

D. Awarding restitution of all monies Defendant acquired by means of any act or practice this Court declares was wrongful, or other appropriate remedy in equity, to Plaintiff and the Class members;

E. Awarding declaratory and injunctive relief as the law and equity permit,

including: enjoining Defendant from continuing the unlawful practices set forth above; and directing Defendant to rectify or cease its discriminatory credit practice.

F. Awarding Plaintiff, individually and on behalf of the Class members, her expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses to the extent to which the law provides;

G. Awarding to Plaintiff, individually and on behalf of the Class members, pre- and post-judgment interest to the extent the law allows; and

H. For such other and further relief as this Court deems just and proper.

Dated: November 10, 2023      LAW OFFICES OF ARA JABAGCHOURIAN, P.C.

By:   */s/ Ara Jabagchourian*
          ARA JABAGCHOURIAN
          *Attorneys for Plaintiff*

### VII.   **JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Dated: November 10, 2023      LAW OFFICES OF ARA JABAGCHOURIAN, P.C.

By:   */s/ Ara Jabagchourian*
          ARA JABAGCHOURIAN
          *Attorneys for Plaintiff*

**COMPLAINT**                                                                                                                    14